UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

FRANK EUGENE LAMB III,

    Plaintiff,

v.

THE BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES; THE UNITED STATES DEPARTMENT OF HOMELAND SECURITY; THE FEDERAL BUREAU OF INVESTIGATION; THE DRUG ENFORCEMENT ADMINISTRATION,

    Defendants.

Case No.: 1:20CV03036

## MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Pursuant to Federal Rule of Civil Procedure 65 and Civil Local Rule 65.1, Plaintiff hereby moves the Court to issue a temporary restraining order, to be followed by a preliminary injunction. In support of this motion, Plaintiff relies upon the attached memorandum of points and authorities. A proposed order is attached. Oral argument is not requested.

WHEREFORE, Plaintiff respectfully requests the Court grant his Motion and issue a preliminary injunction pending a decision on the merits of Plaintiff's claims in this matter.

Respectfully submitted,
Plaintiff, Pro Se
Frank Eugene Lamb III

December 4, 2020


RECEIVED Mail Room
DEC - 7 2020
Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FRANK EUGENE LAMB III,<br><br>      Plaintiff,<br><br>v.<br><br>THE BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES; THE UNITED STATES DEPARTMENT OF HOMELAND SECURITY; THE FEDERAL BUREAU OF INVESTIGATION; THE DRUG ENFORCEMENT ADMINISTRATION,<br><br>      Defendants. | Case No.: 1:20CV03036 |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. BACKGROUND ............................................................................................................. 1

III. ARGUMENT ................................................................................................................... 3

  A. Legal standard ............................................................................................................ 3

  B. Plaintiff Is Likely to Succeed on the Merits .............................................................. 4

    a) 42 U.S.C. § 1983 – Malicious Prosecution in Violation of the Fourteenth Amendment. 4

    b) Intentional Infliction of Emotional Distress ......................................................... 4

    c) Negligence ............................................................................................................. 5

    d) Claims for Failure to Properly Screen and Hire, Failure to Properly Train Against Defendants and Failure to Supervise and Discipline ............................................. 6

C. Absent This Court's Judicial Intervention, Plaintiff Will Suffer Irreparable Harm ............ 6

D. A Temporary Restraining Order Will Not Substantially Harm the Government and Instead Serves the Public Interest. ........................................................................................................ 7

E. The Court Can Grant Equitable Relief Against the Federal Government ........................... 8

IV. CONCLUSION ........................................................................................................................ 9

## TABLE OF AUTHORITIES

**Cases**

*Abourezk v. New York Airlines, Inc.*, 895 F.2d 1456, 1458 (D.C.Cir.1990) ................................. 5
*Amons v. District of Columbia*, 231 F.Supp.2d 109, 117 (D.D.C.2002) ........................................ 5
*Beacon Assocs., Inc. v. Apprio, Inc.*, 308 F. Supp. 3d 277, 287 (D.D.C. 2018) ............................. 7
*Cent. United Life, Inc. v. Burwell*, 128 F. Supp. 3d 321, 330 (D.D.C. 2015), aff'd, 827 F.3d 70 (D.C. Cir. 2016) ............................................................................................................................. 9
*Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) ................. 7
*Doe v. Mattis*, 889 F.3d 745, 751 (D.C. Cir. 2018) ........................................................................ 4
*Doe v. Mattis*, 928 F.3d 1, 7, 23 (D.C. Cir. 2019) .......................................................................... 8
*Drejza v. Vaccaro*, 650 A.2d 1308, 1312 n. 10 (D.C.1994) ........................................................... 5
*E.V. v. Robinson*, 906 F.3d 1082, 1092 (9th Cir. 2018) ............................................................... 10
*Gordon v. Holder*, 721 F.3d 638, 643-44, 652-53 (D.C. Cir. 2013) .............................................. 8
*Gulf Coast Mar. Supply, Inc. v. United States*, 218 F. Supp. 3d 92, 101 (D.D.C. 2016)), aff'd, 867 F.3d 123 (D.C. Cir. 2017) ..................................................................................................... 10
*Homan v. Goyal*, 711 A.2d 812, 818 (D.C.1998) ........................................................................... 5
*Howard Univ. v. Best*, 484 A.2d 958, 985 (D.C.1984) .................................................................. 5
*J.D. v. Azar*, 925 F.3d 1291, 1325, 1337-38 (D.C. Cir. 2019) ...................................................... 8
*Kaiser v. United States*, 761 F.Supp. 150, 156 (D.D.C.1991) ....................................................... 6
*Kerrigan v. Britches of Georgetowne*, 705 A.2d 624, 628 (D.C.1997) ......................................... 5
*Larijani v. Georgetown Univ.*, 791 A.2d 41, 44 (D.C.2002) ......................................................... 5
*League of Women Voters of the U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) ......................... 9
*Morgan Stanley DW Inc. v. Rothe*, 150 F. Supp. 2d 67, 72 (D.D.C. 2001) ................................... 4
*Mova Pharm Corp. v. Shalala*, 140 F.3d 1060, 1066 (D.C. Cir. 1998) ......................................... 4
*Nat'l Ass'n of Mortg. Brokers v. Bd. of Governors of Fed. Reserve Sys.*, 773 F. Supp. 2d 151, 179-80 (D.D.C. 2011) ..................................................................................................................... 7
*Pursuing America's Greatness v. FEC*, 831 F.3d 500, 505, 511-12 (D.C. Cir. 2016) ................... 8
*Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981) ............. 3
*Wisc. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) ....................................................... 7

## I.  INTRODUCTION

Plaintiff brings this action against Defendants for defamation, misrepresentation, negligence, conducting illegal and unconstitutional surveillance and malicious prosecution. For over thirty years Defendants have continued to perform malicious prosecutions against Plaintiff with the intent of causing Plaintiff to suffer emotional distress and conceal the misconduct and illegal activities of their agents. These investigations and Defendants' misconduct have led to Plaintiff's current situation that has been ongoing for over ten years now. Plaintiff was forced to leave the United States of America. Plaintiff currently resides in Ukraine. Plaintiff respectfully requests that the Court enter a temporary restraining order, to be followed by a preliminary injunction.

Plaintiff seeks a preliminary injunction to prevent Defendants, and their employees and agents, from conducting investigations against Plaintiff, pending a determination of the legality of their actions by this Court.

## II.  BACKGROUND

Plaintiff was forced to leave the United States of America due to the fact that he was the witness of the investigations that were conducted in the 1980's where Defendants falsified an investigation to conceal the misconduct and federal crimes committed by their agents. At said time, Defendants conspired with Plaintiff's father to commit extortion and defamation against a lawyer named John Hawtrey. These investigators used false information provided by informants.

The cause of the above actions against Plaintiff is that he was an unwilling participate in illegal activities of Defendants. These investigations were falsified by Defendants. Plaintiff was

1

threatened by Defendants if he did not participate in the investigations. Plaintiff was falsely accused of lying during the course of the investigations. As a result of these Investigations, Plaintiff being forced to leave Texas and move to New Mexico in 1999.

Plaintiff then moved to Albuquerque New Mexico where he resided for eight years. Then, in 2010 Plaintiff attempted to prosecute members of the judicial system of the state of New Mexico. As a result of Plaintiff's activity, in Hobbs New Mexico, Defendants attempted to sell Plaintiff an automatic weapon to accuse him of committing a crime.

Defendants conspired with the states of New Mexico, Arizona, and Washington to falsify court records, medical records, and perform investigations in retaliation for Plaintiff's attempts to prosecute members of the judicial system of the state of New Mexico. While Plaintiff attended the University of New Mexico, Defendants questioned his professors and persuaded them to lower his grades. Defendants also utilized false information provided by their agents including about Plaintiff's ex-wife Cindy Gates and her family members. This led to Plaintiff being falsely accused of domestic violence by Cindy Gates. These Defendants' actions forced Plaintiff to leave New Mexico to live in Phoenix Arizona.

Then, in Arizona, the sheriff Joe Arpaio began investigations that continued the State of New Mexico, ATFE, DEA, DHS, and FBI. At said time, Defendants began contacting all local attorneys that Plaintiff intended to hire for representation, to encourage them not to represent Plaintiff. After filling formal complaints with Robert Mueller (FBI), Eric Holder with the department of Justice, and Janet Napolitano (DHS) Plaintiff was forced to leave Arizona and moved to Washington State.

After living in Tacoma Washington, the State of New Mexico and FBI falsified Plaintiff's criminal history. These falsifications of Plaintiff's criminal history led to Plaintiff

2

being denied entry into Canada. As a result of these malicious prosecutions Plaintiff was forced to leave the United States and went to Russia, Latvia, and then Germany.

Plaintiff spent nearly three years in the German Asylum program and was the victim of mistreatment while in the Asylum program. The right of asylum for victims of political persecution is a basic right stipulated in the Constitution of Germany. In a wider sense, the right of asylum recognizes the definition of 'refugee' as established in the 1951 Refugee Convention and is understood to protect asylum seekers from deportation and grant them certain protections under the law.

Defendants continued their malicious prosecution against Plaintiff by starting investigations with the German Polizei. After leaving Germany to find a lawyer Plaintiff was returned to America after a failed suicide attempt while he was in France.

While in America investigations were began in the attempt to manipulate records and falsely accuse Plaintiff of being involved in drug manufacturing and distribution. Then Plaintiff left America returning to Germany where investigations were began again involving a former Sherriff Joe Arpaio. As a result, Plaintiff left Germany and moved to Ukraine.

### III.    ARGUMENT

#### A.    Legal standard

"The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981). The issuance of a temporary restraining order, like the issuance of a preliminary injunction, depends on the consideration of four factors taken together: whether "(1) there is a substantial likelihood plaintiff will succeed on the merits; (2) plaintiff will be irreparably injured if an injunction is not granted; (3) an injunction will not substantially

3

injure the other party; and (4) the public interest will be furthered by an injunction." *Morgan Stanley DW Inc. v. Rothe*, 150 F. Supp. 2d 67, 72 (D.D.C. 2001) (quoting *Mova Pharm Corp. v. Shalala*, 140 F.3d 1060, 1066 (D.C. Cir. 1998)); see also *Doe v. Mattis*, 889 F.3d 745, 751 (D.C. Cir. 2018).

### B.   Plaintiff Is Likely to Succeed on the Merits

Plaintiff brings claims for defamation, misrepresentation, negligence, conducting illegal and unconstitutional surveillance and malicious prosecution. Plaintiffs meets the burden to show that it has a likelihood of success on the merits of his claims.

#### a) 42 U.S.C. § 1983 – Malicious Prosecution in Violation of the Fourteenth Amendment

The Fourteenth Amendment of the Constitution provides in part: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws. Plaintiff's complaint states enough facts showing that he is deprived of liberty by defendants. Plaintiff is facing malicious prosecutions which do not have evidentiary support. Plaintiff is denied a freedom granted him in the Constitution. Defendants' illegal prosecutions caused that Plaintiff left the United States of America.

#### b) Intentional Infliction of Emotional Distress

To establish a prima facie case of the tort of intentional infliction of emotional distress under District of Columbia law, plaintiffs must allege: "(1) extreme and outrageous conduct on the part of the defendant which (2) either intentionally or recklessly (3) cause[d] the plaintiff severe emotional distress." *Larijani v. Georgetown Univ.*, 791 A.2d 41, 44 (D.C.2002) (citing

*Howard Univ. v. Best*, 484 A.2d 958, 985 (D.C.1984)). See also *Abourezk v. New York Airlines, Inc.*, 895 F.2d 1456, 1458 (D.C.Cir.1990); *Amons v. District of Columbia*, 231 F.Supp.2d 109, 117 (D.D.C.2002); *Kerrigan v. Britches of Georgetowne*, 705 A.2d 624, 628 (D.C.1997). Conduct is "extreme and outrageous" when it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community"-an extremely difficult standard to meet. *Homan v. Goyal*, 711 A.2d 812, 818 (D.C.1998) (quoting *Drejza v. Vaccaro*, 650 A.2d 1308, 1312 n. 10 (D.C.1994)); see also *Kaiser v. United States*, 761 F.Supp. 150, 156 (D.D.C.1991).

Plaintiff's complaint sufficiently pleads that Defendants' conduct are extreme and outrageous. Defendants' investigations do not have evidentiary support and continue for over ten years now. Plaintiff was forced to leave the U.S. and spent nearly three years in the German Asylum program and was the victim of mistreatment while in the Asylum program. Defendants continued their malicious prosecution against Plaintiff by starting investigations with the German Polizei. After leaving Germany to find a lawyer Plaintiff was returned to America after a failed suicide attempt while he was in France. These facts constitute a claim for Intentional Infliction of Emotional Distress.

### c) Negligence

Defendants had a duty to Plaintiff to act with ordinary care and prudence so as not to cause harm or injury to another. By engaging in the malicious prosecutions, Defendants failed to act with ordinary care and breached their duty of care owed to Plaintiff. Defendants failed to act with ordinary care in failing to properly train and supervise their officers with respect to proper procedures in the investigation. Defendants' breach caused the current situation and deprivation of Plaintiff's rights.

### d) Claims for Failure to Properly Screen and Hire, Failure to Properly Train Against Defendants and Failure to Supervise and Discipline.

Defendants have duties and policies established the process of hiring, training and supervising of their employees or agents. Defendant breached their duties to properly hire, train and supervised their agents. Behavior of defendants' employees or agents towards Plaintiff clearly shows lack of adequate training and supervising. As a result of Defendants' actions, Plaintiff suffered physical and psychological injuries.

### C. Absent This Court's Judicial Intervention, Plaintiff Will Suffer Irreparable Harm

A preliminary injunction is warranted because Plaintiff will suffer irreparable harm if the Court does not grant the requested relief. Irreparable harm constitutes injury that is "both certain and great, actual and not theoretical, beyond remediation, and of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm." *Beacon Assocs., Inc. v. Apprio, Inc.*, 308 F. Supp. 3d 277, 287 (D.D.C. 2018) (internal quotations and emphasis omitted). "Irreparable injury" must be "'both certain and great; it must be actual and not theoretical.'" *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) (quoting *Wisc. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam)). The moving party must show a "clear and present need for equitable relief," that is "beyond remediation." *Nat'l Ass'n of Mortg. Brokers v. Bd. of Governors of Fed. Reserve Sys.*, 773 F. Supp. 2d 151, 179-80 (D.D.C. 2011).

Here, Plaintiff will suffer actual damage without a temporary restraining order and preliminary injunction. He will be restricted to return to the U.S. due to malicious prosecutions against him. Moreover, Plaintiff already has suffered irreparable procedural injury. In particular, Plaintiff suffer the ongoing injury of being subject to Defendants' investigation for a long period

6

of time. Plaintiff was forced to leave the U.S. The harm from Defendants' illegal actions viewed alongside the loss of opportunity to leave in the U.S., underscores the need for immediate injunctive relief.

### D. A Temporary Restraining Order Will Not Substantially Harm the Government and Instead Serves the Public Interest.

In seeking a preliminary injunction, Plaintiff also must show that the balance of equities tips in their favor and that injunctive relief would serve the public interest. See *J.D. v. Azar*, 925 F.3d 1291, 1325, 1337-38 (D.C. Cir. 2019); *Pursuing America's Greatness v. FEC*, 831 F.3d 500, 505, 511-12 (D.C. Cir. 2016); *Gordon v. Holder*, 721 F.3d 638, 643-44, 652-53 (D.C. Cir. 2013).

Where, as here, private party seeks injunctive relief against the government, these final two factors of the preliminary injunction test generally call for weighing the benefits to Plaintiff from obtaining the injunction against the harms to the government and the public from the injunction. See *Doe v. Mattis*, 928 F.3d 1, 7, 23 (D.C. Cir. 2019). Here, defendants did not attempt to establish any interest, much less an interest in illegal investigations against Plaintiff. Nor can the defendants show that they will be harmed by issuance of a preliminary injunction that does nothing more than maintain during the pendency of this case the status quo. The Plaintiff, by contrast, has a weighty interest in keeping open an essential channel that allows him an opportunity to enter the United States.

Because Plaintiff has raised serious Fourteenth Amendment questions, the balance of hardships tips sharply in Plaintiff's favor. Plaintiff's evidence—testimony—shows that defendants' agents have exercised their discretion in an arbitrary and retaliatory fashion to punish Plaintiff for unwilling participate in illegal activities of Defendants. In contrast to the substantial and irreparable injuries to Plaintiff, any harm to the defendants would be negligible. The balance of equities weighs heavily in favor of Plaintiff.

Moreover, "[t]here is generally no public interest in the perpetuation of unlawful agency action," but there is a substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations. See *League of Women Voters of the U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016). "Forcing federal agencies to comply with the law is undoubtedly in the public's interest." *Cent. United Life, Inc. v. Burwell*, 128 F. Supp. 3d 321, 330 (D.D.C. 2015), aff'd, 827 F.3d 70 (D.C. Cir. 2016). "The public interest is served both by ensuring that government agencies conform to the requirements of the APA and their own regulations." *Gulf Coast Mar. Supply, Inc. v. United States*, 218 F. Supp. 3d 92, 101 (D.D.C. 2016)), aff'd, 867 F.3d 123 (D.C. Cir. 2017).

For this reason, the balance of the equities and public interest tip in favor of this court prohibiting any defendants' investigation against Plaintiff during the pendency of this case.

### E. The Court Can Grant Equitable Relief Against the Federal Government

The Court has jurisdiction over Plaintiffs' claim for injunctive relief against the federal agents because the federal government has waived its immunity against such claims:

> An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be

dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party

5 U.S.C. § 702. In enacting that sentence, Congress "eliminate[d] the sovereign immunity defense in all equitable actions for specific relief against a Federal agency or officer acting in an official capacity." *E.V. v. Robinson*, 906 F.3d 1082, 1092 (9th Cir. 2018) (quoting H.R. Rep. No. 94-1656, at 9 (1976)). Plaintiffs seek only equitable relief against the federal agents. Thus, sovereign immunity is no bar and the Court has jurisdiction over Plaintiffs' claim.

### IV.   CONCLUSION

For the foregoing reasons, Plaintiff urges the Court to enter a temporary restraining order prohibiting Defendants, and their employees and agents, from conducting investigations against Plaintiff, pending a determination of the legality of their actions by this Court.

> Respectfully submitted,
> Plaintiff, Pro Se
> Frank Eugene Lamb III

December 4, 2020

UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

FRANK EUGENE LAMB III,

    Plaintiff,

v.

THE BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES; THE UNITED STATES DEPARTMENT OF HOMELAND SECURITY; THE FEDERAL BUREAU OF INVESTIGATION; THE DRUG ENFORCEMENT ADMINISTRATION,

    Defendants.

Case No.: 1:20CV03036

**DECLARATION OF FRANK EUGENE LAMB III IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

I, FRANK EUGENE LAMB III, declare as follows:

1. I am a plaintiff in the present action. I make this declaration in support of the Motion for temporary restraining order and preliminary injunction. The matters stated herein are of my own personal knowledge, except those matters stated on information and belief, and as to those matters, I believe them to be true.

2. While residing in the state of New Mexico the FBI and DHS conducted investigations in cooperation with state agencies where my grades were intentionally lowered while I attended. The University of New Mexico. Also, my home life with my now ex-wife Cindy J Gates was destroyed by repeated attempts to use her as an informant to question me concerning fraudulent claims of my participation in methamphetamine manufacturing and distribution, my knowledge of previous investigations involving the ATF and DEA, and my knowledge of my Father's association with both George W Bush and George H W Bush and their conspiracy to conceal the illegal activities of George

Boyett, John Hawtrey and Jim Locke in College Station Texas. This led to the near death of my son Matthew Lamb and my inability to retain custody of my two children Heather and Matthew Lamb. This led to me being forced to leave the state of New Mexico.

3. While residing in the state of Arizona the FBI and DHS in cooperation with state agencies and then Maricopa County Sheriff Joe Arpaio conducted investigations where my grades were influenced while attending Phoenix College. These investigations prevented my use of the administrative complaint process where I was prevented from retaining a lawyer and my writing of several complaint letters reporting abusive psychiatric services at the hands of the state of New Mexico were subverted preventing me from protecting myself against harassment by the state of New Mexico, FBI, and DHS and their conducting fraudulent and harmful investigations. These letters were addressed to then directors Robert S. Mueller and Janet Napolitano and then President and Vice President Barack Obama and Joe Biden. This led to me being forced to leave the state of Arizona.

4. While residing in state of Washington the FBI and DHS in cooperation with state agencies conducted investigations where Lakewood city Officers were parked routinely in front of my residence as a display of force. These investigations led to me being forced to leave America.

5. While residing in Germany in the German Asylum program the FBI and DHS conducted investigations in cooperation with the German government and German Polizei. These investigations prevented my use of the administrative complaint process concerning the mistreatment of myself and several African and Algerian refugees where we were left without food, money, or transportation.

6. While residing in France my psychiatric services were used to question me about my participation in methamphetamine manufacturing and distribution and my knowledge of previous investigations involving the ATF and DEA.

7. While residing in the state of Washington after returning to America from the German Asylum program I was the victim of harassment by the FBI, DHS, and state agencies when my

psychiatric records were circulated and scrutinized by social workers and residents of Seattle. This led to my marginalization including the use of my psychiatric services to question me about my participation in methamphetamine manufacturing and distribution and my knowledge of previous investigations involving the ATF and DEA.

8. While residing in Ukraine the FBI and DHS have continued to conduct intentionally harmful investigations and make erroneous claims including false claims of my refusal to utilize the administrative complaint process subverting my use of the courts.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 4th day of December at Odessa, Ukraine.

Respectfully submitted,
Plaintiff, Pro Se
Frank Eugene Lamb III

December 4, 2020

December 4, 2020

Clerk, U.S. District Court      Via Mail
333 Constitution Avenue, NW
Washington, DC 20001

**Re: LAMB v. BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES et al, Case No. 1:20-CV-03036**

Dear Clerk of the Court,

Enclosed please find the motion for temporary restraining order and preliminary injunction, declaration of Frank Eugene Lamb III, and proposed order.

I am currently live in Ukraine, in this regard I would greatly appreciate if you could utilize e-mail to send me documents whenever possible. My direct email is frankeugenelamb3@outlook.com.

Should you have any questions please do not hesitate to contact me. My phone numbers: +380935742711 (Ukrainian) and (512) 813-1721 (American).

Sincerely yours,

Frank Eugene Lamb III

*[signature]*

RECEIVED
Mail Room

DEC 7 2020

Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia