UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FRANK EUGENE LAMB, III,

     *Plaintiff*,

     v.

BUREAU OF ALCOHOL, TOBACCO,
FIREARMS AND EXPLOSIVES et al.,

     *Defendants*.

Civil Action No. 20-3036 (TJK)

<u>MEMORANDUM OPINION</u>

Plaintiff Frank Eugene Lamb, III, has, for the second time, sued the Department of Homeland Security and several components of the Department of Justice, alleging a three-decades-long conspiracy between those agencies, Lamb's father, three states, and the Federal Republic of Germany, to surveil, defame, and maliciously prosecute Lamb. Defendants have moved to dismiss, arguing that the Court lacks jurisdiction and that, even if the Court has jurisdiction over certain claims, Lamb has failed to state a claim on which relief can be granted. For the reasons explained below, the Court will grant the motion to dismiss for lack of jurisdiction.

I.    **Background**

Lamb alleges that he has suffered many hardships over the last thirty years, all at the hands of four defendant federal agencies: the Department of Homeland Security ("DHS"); the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"); the Federal Bureau of Investigation ("FBI"); and the Drug Enforcement Administration ("DEA").

According to Lamb's complaint, his troubles started in Texas. There, he claims, Defendants "conspired" with Lamb's "father to commit extortion and defamation against a lawyer" who either lived or worked in College Station, Texas. ECF No. 1 ¶¶ 11, 13. Because Lamb would not

participate in the agencies' "illegal activities," which supposedly included using "false information provided by informants," Lamb says that he was accused of lying during an investigation and "forced to leave Texas and move to New Mexico in 1999." *Id.* ¶¶ 13–16.

After living in New Mexico for nearly a decade, Lamb says that he tried to "prosecute members of the judicial system of the state of New Mexico." ECF No. 1 ¶¶ 17–18. Lamb does not explain why he wanted to prosecute individuals in New Mexico's judicial system—or exactly how he planned to do so—but he alleges that, because of his efforts, "Defendants attempted to sell [him] an automatic weapon to accuse him of committing a crime." *Id.* ¶ 19. Defendants also "conspired with the states of New Mexico, Arizona, and Washington to falsify court records, medical records, and perform investigations in retaliation for" Lamb's prosecutorial efforts. *Id.* ¶ 20. Lamb further alleges that Defendants persuaded his professors at the University of New Mexico to "lower his grades." *Id.* ¶ 21. And Lamb says that they used "false information" about Lamb's ex-wife and his ex-wife's family, which caused Lamb to be "falsely accused of domestic violence by" his ex-wife. *Id.* ¶ 22.

As a result of Defendants' alleged actions in New Mexico, Lamb moved to Arizona. ECF No. 1 ¶ 23. There, he claims, "sheriff Joe Arpaio began investigations that continued" those conducted in New Mexico by DHS, ATF, FBI, and DEA. *Id.* ¶ 24. Lamb says that he looked for an attorney to hire, but the same agencies had contacted "all local attorney[s] . . . to encourage them not to represent" Lamb. *Id.* ¶ 25. Lamb says that he then filed "formal complaints with Robert Mueller (FBI), Eric Holder with [DOJ], and Janet Napolitano (DHS)," and moved to the state of Washington. *Id.* ¶ 26. At one point, Lamb apparently tried to enter Canada but was "denied entry" because of his criminal history, which he claims the agencies "falsified." *Id.* ¶ 27. Eventually, because of Defendants' "malicious prosecutions," Lamb alleges he "was forced to leave the United

States" entirely, and so "went to Russia, Latvia, and then Germany." *Id.* ¶ 28. But according to the complaint, Defendants still did not leave him alone. Lamb claims that the agencies "start[ed] investigations with the German Polizei" and that he was a victim of mistreatment within the "German Asylum" program. *Id.* ¶¶ 29–31.

Lamb later returned to the United States, where he claims that "investigations were began in the attempt to manipulate records and falsely accuse [Lamb] of being involved in drug manufacturing and distribution." ECF No. 1 ¶ 32–33. As a result, Lamb then went back to Germany, but investigations continued there, this time "involving . . . Sherriff Joe Arpaio." *Id.* ¶ 34. So Lamb ultimately moved to Ukraine, where he lives today. *Id.* ¶ 35.

In 2019, Lamb sued Defendants over these allegations, seeking monetary damages. *See Lamb v. ATF et al.*, No. 19-cv-1703. Lamb claimed that the agencies were liable under 42 U.S.C. § 1983 for malicious prosecution, failure to properly screen and hire, failure to properly train, and failure to supervise and discipline. He also claimed that the agencies were liable under the Federal Tort Claims Act, known as the FTCA. Lamb listed claims for negligence and intentional infliction of emotional distress separate from his FTCA claim, but both sounded in tort. The court dismissed the case, sua sponte, for two reasons. First, the court explained that Section 1983 only concerns acts taken under the color of *state* law; it does not render the *federal* government liable for "constitutional tort claims." *Lamb*, No. 19-cv-1703, ECF No. 4 at 2 (D.D.C. July 3, 2019) (quoting *FDIC v. Meyer*, 510 U.S. 471, 478 (1994)). Second, Lamb did not allege that he exhausted his administrative remedies, a jurisdictional requirement to bring a claim under the FTCA. *Id.* at 2–3. The Circuit affirmed. *See Lamb v. ATF et al.*, 790 F. App'x 222 (D.C. Cir. 2020) (Mem.).

In 2020, Lamb sued again, bringing the same claims against the same agencies for the same conduct and seeking the same monetary damages. *See* ECF No. 1. The only difference is that

Lamb now alleges that in February 2020, he "timely submitted administrative claims to" the defendant agencies, and because six months had elapsed without a decision on those claims, he has "met all of the administrative requirements of the [FTCA]." *Id.* ¶¶ 8–10. The agencies moved to dismiss. *See* ECF No. 16.

## II.      Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) "presents a threshold challenge to the court's jurisdiction." *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987). As federal courts are courts of limited jurisdiction, it is "presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). Thus, when faced with a motion to dismiss under Rule 12(b)(1), "the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence." *Moran v. U.S. Capitol Police Bd.*, 820 F. Supp. 2d 48, 53 (D.D.C. 2011) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). In reviewing such a motion, while the Court is not limited to the allegations in the complaint and may consider materials outside the pleadings, the Court must "accept all of the factual allegations in [the] complaint as true." *Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) (alteration in original) (quoting *United States v. Gaubert*, 499 U.S. 315, 327 (1991)).

## III.     Analysis

Defendants argue that Lamb's complaint should be dismissed for several reasons. First, they say that the Court lacks jurisdiction over Lamb's claims because the claims are patently insubstantial, and the United States has not waived sovereign immunity for them. If the Court has jurisdiction over any of Lamb's claims, then Defendants contend that the only claims even possibly exhausted were those for intentional infliction of emotional distress and negligence, and Lamb's complaint does not state a claim for either. In response, Lamb argues among other things that the

Court should allow him to amend his complaint to fix any deficiencies. But the Court agrees with Defendants that it lacks jurisdiction and that allowing Lamb to amend his complaint would be futile. Thus, it will dismiss.

### A.      Lamb's Claims Are Patently Insubstantial

The Court first finds that it lacks jurisdiction because Lamb's claims are "patently insubstantial." *Tooley v. Napolitano*, 586 F.3d 1006, 1009–10 (D.C. Cir. 2009). As the D.C. Circuit has explained, "[f]ederal courts are without power to entertain claims otherwise within their jurisdiction if [the claims] are so attenuated and unsubstantial as to be absolutely devoid of merit." *Ord v. District of Columbia*, 587 F.3d 1136, 1144 (D.C. Cir. 2009) (cleaned up) (quoting *Hagans v. Lavine*, 415 U.S. 528, 536 (1974)). Patently insubstantial claims are "flimsier than doubtful or questionable—they must be essentially fictitious." *Id.* (cleaned up). "Claims that are 'essentially fictitious' include those that allege bizarre conspiracy theories, fantastic government manipulations of the will or mind, or any sort of supernatural intervention." *Bickford v. United States*, 808 F. Supp. 2d 175, 179 (D.D.C. 2011) (cleaned up).

Lamb's claims fall within the realm of "bizarre conspiracy theories" that warrant dismissal. Lamb claims that, over the course of the last 30 years, four federal agencies have conspired with his father, three states, and Germany to surveil, defame, and maliciously prosecute him. ECF No. 1 ¶¶ 1, 15, 20, 31. According to Lamb, it all started when he refused to participate in his father's and the agencies' "illegal" attempts to extort and defame an attorney in Texas. *Id.* ¶ 12–14. Because he refused to participate, Lamb says Defendants forced him to move out of Texas. *Id.* ¶ 16. Lamb next claims that, nearly one decade later, the same agencies targeted him because he tried to "prosecute" members of the New Mexico judicial system. *Id.* ¶ 20. This time, Defendants apparently "conspired with the states of New Mexico, Arizona, and Washington to falsify court

5

records, medical records," and later criminal records, which caused Lamb's denial of entry into Canada. *Id.* ¶¶ 20, 27.  The agencies' retaliatory efforts also supposedly included trying to sell Lamb an automatic weapon so that the agencies could accuse him of a crime, persuading Lamb's professors to lower his grades, and convincing local attorneys in Arizona not to represent him. *Id.* ¶¶ 19, 21, 25.  Lamb further blames his ex-wife's accusations of domestic violence against him on the agencies' use of "false information." *Id.* ¶ 22.  And Lamb claims that the agencies worked with German police to continue maliciously investigating him while he lived overseas, and he suggests that these investigations led to his mistreatment in the "German Asylum program." *Id.* ¶¶ 29–31.

The Court takes as true at this stage that Lamb's various misfortunes—denial of entry into Canada, lower grades, difficulty finding a lawyer, issues with his ex-wife, and mistreatment in Germany—all happened.  But Lamb has offered "no facts or circumstances to suggest that those misfortunes occurred because agents of the federal government have been" falsifying records, surveilling him, or investigating him—only conclusory statements. *Riles v. Geithner*, 693 F. Supp. 2d 1, 3 (D.D.C. 2009).  In the end, Lamb's woes amount to nothing but "a series of unconnected events" strung together "to support [Lamb's] conclusion that []he has been singled out for harassment by the government." *Curran v. Holder*, 626 F. Supp. 2d 30, 34 (D.D.C. 2009).  And "[c]ourts in this circuit have held that claims of a widespread conspiracy cannot go forward when a plaintiff offers only a laundry list of wrongful acts and conclusory allegations to support [his] theory of conspiracy." *Shao v. Roberts*, No. 18-cv-1233 (RC), 2019 WL 249855, at *16 (D.D.C. Jan. 17, 2019) (cleaned up), *aff'd sub nom.*, No. 19-5014, 2019 WL 3955710 (D.C. Cir. July 31, 2019), *and aff'd*, No. 19-5014, 2019 WL 11340269 (D.C. Cir. Nov. 13, 2019); *see also Wightman-Cervantes v. Mueller*, 750 F. Supp. 2d 76, 79 (D.D.C. 2010) (dismissing for lack of subject-matter

jurisdiction a complaint "alleg[ing] a wide-ranging conspiracy among high-ranking state and federal officials" when the "factual allegations [were] conclusory and unsupported").

Lamb contends that his claims are not "patently insubstantial," but his argument is based largely on circular reasoning.  He starts out by arguing that his claims are not "patently insubstantial" because that label applies only when a case is "essentially fictitious, wholly insubstantial, obviously frivolous, and obviously without merit."  ECF No. 19 at 10.  That is true, but unhelpful for Lamb.  At one point, Lamb suggests that his claims are not "patently insubstantial" because they are based on a "legal theory put forward by a Justice of th[e] [Supreme] Court and uncontradicted by the majority in any of [its] cases."  *Id.* 10–11 (cleaned up).  But the case Lamb cites for this argument, *Shapiro v. McManus*, 577 U.S. 39, 45–46 (2015), concerns the concept of "constitutionally insubstantial," which arises in a different context and concerns whether a plaintiff's legal theory has been foreclosed by precedent.  While there are problems with Lamb's legal theories— and they are explained below—the patent frivolity of Lamb's claims stems from his underlying allegations, which purport to describe a three-decades-long bizarre conspiracy between federal agencies, Lamb's father, several states, and Germany.  And, contrary to Lamb's arguments, his bald assertions that he "was forced to leave the US and spent nearly three years in the German Asylum program" do not support the existence of this grand conspiracy or otherwise "show[] that [Lamb's] claims are not insubstantial."  ECF No. 19 at 11.  For these reasons, Lamb's claims are patently insubstantial, and so the Court will dismiss the complaint.

**B.      Defendants Have Not Waived Sovereign Immunity for Lamb's Claims**

Even if Lamb's claims were not so obviously frivolous, the Court would still dismiss for lack of jurisdiction because Defendants have not waived sovereign immunity for them.  The Supreme Court has made clear that neither the United States nor its agencies can "be sued without

[the United States'] consent and that the existence of consent is a prerequisite for jurisdiction."

*United States v. Mitchell*, 463 U.S. 206, 212 (1983); *see also Fed. Deposit Ins. Corp. v. Meyer*,

510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government

and its agencies from suit."). Lamb invokes 42 U.S.C. § 1983 and the FTCA, but Defendants have

not waived sovereign immunity for these claims. And in the case of his FTCA claims, even if

Lamb had sued the right party—the United States—the Court would still have to dismiss them

because the United States has not waived sovereign immunity for unexhausted claims like Lamb's.

### 1.      42 U.S.C. § 1983

Lamb's complaint, as with the one he filed in 2019, seeks "money damages against four

federal government agencies alleging deprivations of his constitutional rights under 42 U.S.C.

§ 1983." *Lamb*, 790 F. App'x at 222. He brings claims under Section 1983 for "Malicious Pros-

ecution in Violation of the Fourteenth Amendment" (Count 1), "Failure to Properly Screen and

Hire" (Count 5), "Failure to Properly Train Against Defendants" (Count 6), and "Failure to Super-

vise and Discipline" (Count 7). ECF No. 1 ¶¶ 37–81. But as the court explained in dismissing

Lamb's last case, Section 1983 bars the deprivation of rights by individuals acting under the color

of *state* law. *Lamb*, No. 19-cv-1703, ECF No. 4 at 2. "By its terms, [it] does not apply to any

federal government entity or to federal officials acting under federal law." *Way v. Johnson*, 893

F. Supp. 2d 15, 22 (D.D.C. 2012); *see also Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1104

(D.C. Cir. 2005) (cited by *Lamb*, 790 F. App'x at 222). Accordingly, it does not "waive the United

States' sovereign immunity." *Dye v. United States*, 516 F. Supp. 2d 61, 71 (D.D.C. 2007); *see*

*also Partovi v. Matuszewski*, 647 F. Supp. 2d 13, 17–18 (D.D.C. 2009), *aff'd*, No. 09-5334, 2010

WL 3521597 (D.C. Cir. Sept. 2, 2010).  Lamb does not argue otherwise.[1]  Thus, Defendants have

not waived sovereign immunity for Lamb's Section 1983 claims, and they must be dismissed.

### 2.      Federal Tort Claims Act

Lamb's three remaining claims should be assessed under the FTCA.  Count 2 is captioned

"Violation of 28 U.S.C. § 2680," referencing a section of the FTCA.  ECF No. 1 ¶¶ 49–51.  Mean-

while, Counts 3 and 4 are for negligence and intentional infliction of emotional distress.  *Id.* ¶¶ 52–

60.  Neither Count 3 nor Count 4 references the FTCA specifically, but both sound in tort.  And

"[w]hen a plaintiff seeks monetary damages against a federal agency for certain torts committed

by federal employees, the only possible basis for court jurisdiction would be the [FTCA]."  *Epps*

*v. U.S. Att'y Gen.*, 575 F. Supp. 2d 232, 238 (D.D.C. 2008); *see also Johnson v. Veterans Affs.*

*Med. Ctr.*, 133 F. Supp. 3d 10, 15 (D.D.C. 2015) (describing the FTCA as "the *exclusive* remedy"

for plaintiffs seeking "monetary damages against a federal agency for torts").

The FTCA "is a limited waiver of the United States' sovereign immunity and renders the

Federal Government liable to the same extent as a private party for certain torts of its employees

committed within the scope of their employment."  *GAF Corp. v. United States*, 818 F.2d 901, 904

(D.C. Cir. 1987); 28 U.S.C. § 2674.  That said, "the United States may define the terms upon which

it may be sued and absent full compliance with the conditions the Government has placed upon its

waiver, courts lack jurisdiction to entertain tort claims against it."  *GAF Corp.*, 818 F.2d at 904

(footnote omitted).  There are at least two such conditions for FTCA claims that Lamb's claims do

not meet.

---

[1] Lamb instead states that he "intended" to amend his complaint to include a request for relief "other than money damages," and he then cites the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, *et seq.*, instead of Section 1983.  ECF No. 19 at 12.  But as the Court explains below, this attempt to amend his complaint through an opposition brief fails.

To start, an "FTCA claim must be against the United States." *Johnson*, 133 F. Supp. 3d at 16; *see also Goddard v. D.C. Redev. Land Agency*, 287 F.2d 343, 345–46 (D.C. Cir. 1961). "Even if a federal agency may sue and be sued in its own name, FTCA claims against that federal agency are barred." *Johnson*, 133 F. Supp. 3d at 16 (citing 28 U.S.C. § 2679(a)). Yet Lamb has named only federal agencies as defendants. That is usually "reason alone" to dismiss his FTCA claims "for lack of subject matter jurisdiction." *Cox v. Sec'y of Lab.*, 739 F. Supp. 28, 29 (D.D.C. 1990). That said, courts often do not hold such a pleading defect against a pro se plaintiff like Lamb. *See, e.g.*, *Bell v. U.S. Dep't of Just.*, No. 18-cv-2928 (TJK), 2019 WL 2931334, at *3 n.3 (D.D.C. Jul. 8, 2019); *Chandler v. Fed. Bureau of Prisons*, 226 F. Supp. 3d 1, 5 n.3 (D.D.C. 2016) ("Even though this pro se plaintiff has not named the United States as a party, the Court overlooks this pleading defect and instead treats plaintiff's claim as if it had been brought against the United States directly.").

But there is another problem with Lamb's FTCA claims that would warrant dismissal even if Lamb had sued the United States: Lamb has not shown that he exhausted his administrative remedies before suing. The FTCA provides that a tort claim cannot be brought against the United States "unless the claimant . . . first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency[.]" 28 U.S.C. § 2675(a). This exhaustion requirement is also known as the FTCA's "presentment requirement," and it "is a 'jurisdictional prerequisite to filing suit.'" *Tookes v. United States*, 811 F Supp. 2d 322, 331 (D.D.C. 2011) (quoting *GAF Corp.*, 818 F.2d at 904). In this Circuit, a claimant has properly presented his claim when he "provides the agency with (1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum-certain damages claim." *Id.*

10

(cleaned up). It is Lamb's burden to show "by a preponderance of the evidence that he adminis-

tratively exhausted his FTCA claim[s] . . . before commencing this action." *Hammond v. Fed.*

*Bureau of Prisons*, 740 F. Supp. 2d 105, 112 (D.D.C. 2010).

Lamb has not shown that he properly presented, and thus exhausted, his FTCA claims

against any Defendant. That failure is most apparent for Lamb's claims against the FBI, ATF, and

DEA. Those agencies submitted declarations explaining that a search of relevant records failed to

reveal the receipt of any standard FTCA claim forms—known as a SF-95—or any other written

notification of Lamb's injuries or claim for monetary damages. *See* ECF No. 16-3 ¶¶ 3-5; ECF

No. 16-4 ¶¶ 3-5; ECF No. 16-2 ¶¶ 6-7. In response, Lamb attaches an unsigned SF-95 addressed

to the Department of Justice, FBI, DEA, and ATF, *see* ECF No. 19 at 22; a letter from the FBI

dated March 23, 2021, *see id.* at 27; and what appear to be Lamb's own follow-up letters sent in

May 2020, *id.* at 21 & 26. But neither the SF-95 nor the follow up letters establishes that Lamb

sent any form, much less that the agencies received one. And the FBI's letter was from its "Internal

Affairs Section," suggesting that it did not understand any communication from Lamb to have

been a claim for damages. *See* ECF No. 19 at 27. In sum, none of these documents shows by a

preponderance of the evidence that Lamb administratively exhausted his FTCA claims against the

FBI, ATF, and DEA. Thus, the Court has no jurisdiction over these claims, and they must be

dismissed.

That leaves DHS. The parties agree that Lamb presented a SF-95 and an attached letter to

DHS in February 2020. *See* ECF No. 16-5 at 2–8. But that submission was insufficient even

though "[t]he standard for sufficient notice under the FTCA is minimal." *Tookes*, 811 F. Supp. 2d

at 331.[2]   Claimants "are not required to substantiate their claims to the agency's satisfaction."

*Tsaknis v. United States*, 517 F. Supp. 2d 295, 299 (D.D.C. 2007).  But the claimant must submit

"a written statement 'sufficiently describing the injury to enable the agency to begin its own in-

vestigation.'"  *Id.* (quoting *GAF Corp.*, 818 F.2d at 919–20).  He "must assert *facts* such that the

agency can assess the claim for settlement.  Thus, whether a claimant has satisfied the presentment

requirement depends on the facts set forth in the administrative claim[.]"  *Smith v. United States*,

157 F. Supp. 3d 32, 39 (D.D.C. 2016) (internal citation omitted).

   Lamb's submission to DHS included few, if any, facts which the agency could have used

to investigate and assess the sweeping claims in his complaint.  In the space on the form where a

claimant must state the nature of his claim, Lamb wrote: "[p]ersonal injury including libelous,

slander, defamation, emotional suffering, mental distress[s,] fear, anxiety, and shame."  ECF No.

16-5 at 2.  Lamb also referred to an attached letter, *id.*, but it is hardly any more helpful, *id.* at 4.

There, Lamb accuses DHS's "former director" and "employees" of libel, slander, defamation, re-

taliation, harassment, falsification of records, negligence, emotional distress, and mental anguish

in only vague and conclusory terms.  *Id.*  The letter speaks mostly about the acts of some "federal

and states investigators," rather than DHS officials specifically.  *Id.*  And it gives no inclination

about *when* any tortious conduct occurred—suggesting only that it happened sometime in the last

10 years.  *Id.*  In short, Lamb's claim was "so vague or lacking in detail that" DHS could "[]not be

---

[2] Defendants concede that the submission "arguably" exhausted Lamb's claims against DHS "for libel, slander defamation, intentional infliction of emotional distress, some form of misrepresentation, and negligence in connection to the government's alleged investigation of him."  ECF No. 16-1 at 15.  But of course, the Court "has an independent obligation to determine whether subject-matter jurisdiction exists, even if not specifically raised by Defendant."  *Smith v. United States*, 157 F. Supp. 3d 32, 40 (D.D.C. 2016) (citing *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 501 (2006)).  And for the reasons explained above, it concludes that Lamb's submission to DHS did not exhaust those claims.

expected to initiate any investigation at all." *Burchfield v. United States*, 168 F.3d 1252, 1257 (11th Cir. 1999); *see also Tidd v. United States*, 786 F.2d 1565, 1568 (11th Cir. 1986) ("For an agency to be able to initiate an investigation into a tort claim . . . it must be apprised of the location and approximate date of the incident."); *Romulus v. United States*, 160 F.3d 131, 132 (2d Cir. 1998) ("A claimant must provide more than conclusory statements which afford the agency in-volved no reasonable opportunity to investigate.").

To be sure, the Circuit has noted in dicta that when someone "makes a reasonable effort to notify the Government of a claim, and the Government fails to object to the adequacy of notice provided within the six-month period statutorily afforded to make final disposition of that claim, objections which might prove legitimate when raised timely would seem to lose weight." *GAF Corp.*, 818 F.2d at 916 n.86. But that has not stopped courts in this district from evaluating the sufficiency of claims to which the agency did not respond within six months. *See Tookes*, 811 F. Supp. 2d at 325 (considering sufficiency of complaint); *see also Smith*, 157 F. Supp. 3d at 35, 39–40; *but see Brandon Mill Manager, LLC v. United States*, No. 20-cv-1279 (APM), 2021 WL 3722711, at *4–5 (D.D.C. Aug. 23, 2021) (finding that the court had jurisdiction even though plaintiffs did not "present sum-certain damages claims," because the agency never objected to the claims in the six months after they were filed). That makes sense. The Circuit did not go so far as to say that an agency's failure to object to an administrative claim within six months definitively dooms any argument about the sufficiency of the claim. *See GAF Corp.*, 818 F.2d at 916 & n.86. Here, even weighing DHS's failure to respond, the Court has no problem concluding that Lamb's submission was insufficient to notify DHS of these claims in the complaint. As one court held,

"[i]f the function of [section] 2675 is to be served and the notice requirement is to have any meaning whatsoever, more information must be provided than was furnished here."  *Tidd*, 786 F.2d at 1568.[3]

### C.        The Court Need Not Allow Lamb To Amend His Complaint

In his opposition brief, Lamb requests that the Court "allow him to amend the Complaint to correct any deficiencies the Court may specify," rather than grant Defendants' motion to dismiss.  ECF No. 19 at 6.  Lamb also says that he "intended to amend the complaint by adding relief other than money damages"—apparently because he wants to bring a claim for malicious prosecution under the APA, which allows claims "seeking relief other than money damages." *Id.* at 12 (quoting 5 U.S.C. § 702).  But the Court will not construe these assertions about additional relief or the APA as constructive amendments or otherwise allow Lamb to amend his complaint.

A plaintiff typically "cannot amend his Complaint via an opposition brief to a motion to dismiss."  *Gaines v. District of Columbia*, 961 F. Supp. 2d 218, 225 (D.D.C. 2013).  Nor is an opposition brief the proper place to request leave to amend a complaint. *See Massaquoi v. District of Columbia*, 81 F. Supp. 3d 44, 55 (D.D.C. 2015).  Sometimes, "courts in this circuit allow *pro se* opposition briefs that present new claims to constructively amend the original complaint." *Wilson v. Cox*, 828 F. Supp. 2d 20, 34 (D.D.C. 2011), *aff'd in part*, No. 12-5070, 2012 WL 5896961 (D.C. Cir. Oct. 19, 2012), *and rev'd and remanded on other grounds*, 753 F.3d 244 (D.C. Cir. 2014) (citing *Richardson v. United States*, 193 F.3d 545, 548–50 (D.C. Cir. 1999)).  But given that the complaint is otherwise patently insubstantial, allowing Lamb to amend it would be futile. *See Heard v. U.S. Dep't of State*, No. 08-cv-02123 (RBW), 2010 WL 3700184, at *8 (D.D.C. Sept.

---

[3] Thus, the Court need not reach Defendants' well-developed argument that even if Lamb's SF-95 and attached letter *had* administratively exhausted certain FTCA claims against DHS, they should be dismissed for failure to state a claim.  *See* ECF No. 16 at 11–15.

17, 2010) ("A motion to amend a complaint should be denied as futile if the complaint, even as amended, could not survive a motion to dismiss.").  Similarly, Lamb has not specified precisely how he would successfully amend the complaint to cure the other jurisdictional problems identified above.  Lamb suggests that he would add a new claim for nonmonetary relief under the APA, but he has not explained how he could plead such a claim.  *See Jefferson v. Harris*, 170 F. Supp. 3d 194, 217 (D.D.C. 2016) ("To survive a motion to dismiss, a plaintiff invoking the APA must meet two requirements relevant here: first, the [challenged] action must be 'agency action' as defined by 5 U.S.C. § 551(13); and second, it must be 'final[.]'").  Thus, the Court will not construe Lamb's new arguments as amendments to his complaint and will deny Lamb's request to amend his complaint.

## IV.      Conclusion

For all these reasons, the Court will grant Defendants' motion to dismiss and dismiss the complaint.  A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: January 24, 2022